## MONAGAS v. FOX FILM CORPORATION.
### No. 2499.

Circuit Court of Appeals, First Circuit.

Feb. 11, 1931.

Cay, Coll y Cuchi, of San Juan, Porto Rico, for appellant.

Carroll G. Walter, of New York City (Henri Brown, of San Juan, Porto Rico, on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

This suit for breach of contract involves the single question whether the court below erred in ordering a verdict for the defendant. Plaintiff was the successful candidate in a "beauty contest" promoted by the defendant in Porto Rico and advertised in various issues of the magazine "Grafico" in 1927, the material parts of which are as follows:

"This contest is organized under the joint auspices of the Review 'Grafico' and the Fox Film Corporation.

"Rules of the Grafico-Fox-Film Contest.

"1. This contest will be known as the Grafico-Fox-Film Contest. It has as its purpose the election of the most beautiful young lady in Porto Rico.

"2. The winning young lady, at the end of the great Grafico-Fox-Film contest, will be known as 'Miss Porto Rico' and will be entitled to the following prizes:

"(a) A free trip to New York and return in a Steamship of the Porto Rico Line.

"(b) Free board and lodging in one of the best hotels of New York, accompanied by a chaperone of the Fox Film Corporation.

"(c) Visits to the moving picture studio of the Company 'Fox Film Corporation', officially conducted by representatives of the Fox Company.

"(d) Take part in a picture produced especially for 'Miss Porto Rico' that will afterwards be exhibited in moving picture houses of the island and outside of Porto Rico.

"(e) Be filmed especially for the news film of the Fox Company, that will be exhibited in the best moving picture houses both in Porto Rico and in Latin America and other parts of the world; visits to the best theaters, moving pictures, etc., during her stay in the North; and all the many attentions that 'Miss Porto Rico' will receive as representative of the beauty of this island in the exterior.

"This contest is open to all young ladies of the island who possess the following qualifications:

"(a) Be not less than sixteen years of age.

"(b) Be a native of Porto Rico."

Other parts of the published offer provide for votes through coupons cut from the "Grafico" and the ultimate selection by a jury of prominent persons of one of the twelve young ladies thus voted for as the most beautiful "Miss Porto Rico."

Defendant concedes that plaintiff's admitted acceptance of the terms of this offer made a valid contract binding it. The controversy arose out of the construction of the contract. In plaintiff's complaint she alleged:

"(b) The winner of the contest was to consent to be named 'Miss Porto Rico,' her photographs to be widely displayed in the public press, and she herself to be employed and compensated by the defendant in accordance with the offers and terms of the

said contest as aforesaid and as to be here-inafter stated.

"(c) The winner of the said contest once so selected was to be paid by the defendant corporation for all the expenses of a trip to the United States, under the care, super-vision and authority of the defendant, in-cluding first-class hotel accommodations and other similar expenditures.

"And this plaintiff herein specifically al-leges that it was publicly offered and ten-dered by the defendant herein as a considera-tion for the participation in the aforesaid contest, and that it was accepted by this plaintiff as a promise from the defendant herein, that once arrived to the city of New York, in the United States, the said winner of this contest was to be taken to visit the cine-matograph - studios owned by the defendant corporation in the United States, and to be placed under the care and supervision of the proper officers and employees of the defend-ant corporation for the purposes to be here-after stated.

"And this plaintiff specifically alleges that as a main inducement for the acceptance of this offer, and as a part of its considera-tion, the promise was made by the defend-ant corporation to all participants in the aforesaid contest generally, and to this plain-tiff individually, to employ the winner of the said contest in the production of a film as one of the main artistic characters therein, al-ways under the care and supervision of the proper technical employees of the defendant corporation, said film to be shown in those main theatres and show halls of the world where the defendant corporation distributes its films and productions for public exploi-tation thereof, with the purpose and inten-tion of securing to the winner of the contest, Miss Porto Rico, a career as a cinemato-graph artist, under the care and protection of the defendant corporation."

Defendant denies that it "in any manner or form offered to employ, train, apprentice or give a trial to plaintiff as a principal or as a minor character in any of its productions or to prepare her for and secure to her em-ployment as a moving picture artist."

After plaintiff's election as the winner of the contest, she had interviews with defend-ant's representatives, and stated her construc-tion of its undertaking, as follows:

"That was the idea, that she should go to the studio and have a course of training in preparation for a principal part in a com-mercial film; * * * that she was to be given a course of training in the studio, for such time as might be necessary, until she should be competent to take a principal part in a moving picture; that this was all at the expense of the Fox Film Corporation; that that was her understanding of their contract, of their engagement. * * *

"That what she says in the final clause of paragraph three of the complaint, read by counsel, is true as to compensation after be-ing trained; that after placing herself un-der the protection of the Fox Film Corpora-tion, and having given satisfaction, she would have been able to remain with them under contract or with some other house; * * * that the understanding was that she should have one year of training. * * *

"That these promises that she had been talking about, this contract she says was made by the Fox Film Company, was stated in these rules and conditions printed in the Grafico."

Her father, duly authorized by her, wrote in substance the same view of defendant's agreement.

When defendant's representatives denied any such construction, plaintiff told them "that she was not disposed to go merely on a pleasure trip; and that she would not have permitted her name to have been used for anything of that kind."

As plaintiff refused to go to New York, or to do anything further under the contract, the court below ordered a verdict for defendant.

This ruling was right. The construction of this written contract was for the court—not for the jury. 13 C. J. 771; 26 C. J. 77. Ward v. United States, 14 Wall. 28, 20 L. Ed. 792; Hamilton v. Liverpool & L. & G. Ins. Co., 136 U. S. 242, 255, 10 S. Ct. 945, 34 L. Ed. 419.

The result is the same, whether the ruling be grounded on the theory that the defendant made no such contract as plaintiff alleged, or on the theory that she herself repudiated the actual contract and thus relieved the defend-ant of all obligations thereunder. Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953; Williston Contracts, §§ 1294, 1325; Batlle v. Lichtenstein, 33 Porto Rico, 136; Portela v. Porto Rican-Am. Tobacco Co., 4 Porto Rico, 29. Compare Queen Ins. Co. v. Meyer Milling Co. (C. C. A.) 43 F.(2d) 885.

The judgment of the District Court is af-firmed, with costs to the appellee.